UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

LUIS RICARDO PAULINO RODRIGUEZ,

                              Plaintiff,

   -against-

NEW YORK DOWNTOWN HOSPITAL
and THOMAS NAPARST, M.D.,

                             **Defendants.**

-----------------------------------------------------------------X

14-CV-05958 (PAC)(SN)

REPORT &
RECOMMENDATION

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE PAUL A. CROTTY:**

      The plaintiff Luis Ricardo Paulino Rodridguez, proceeding *pro se* and *in forma pauperis*, brings this action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), against New York Downtown Hospital, now doing business as The New York Presbyterian Lower Manhattan Hospital ("Lower Manhattan Hospital"), and Thomas Naparst, M.D. (collectively, the "defendants"), alleging that while he was a pretrial detainee at the Metropolitan Correctional Center New York ("MCC"), he received inadequate medical care at Lower Manhattan Hospital, and that the defendants were deliberately indifferent to his serious medical condition in violation of the Fifth Amendment.[1]

---

[1] Rodriguez's complaint was filed using the Court's form for complaints filed under 42 U.S.C. § 1983. As a federal prisoner suing two allegedly federal defendants, the Court construes his complaint as bringing a claim under Bivens. See Holland v. Pinkerton Sec., 68 F. Supp. 2d 282, 283 (S.D.N.Y. 1999) ("A Bivens action, the federal common law counterpart to 42 U.S.C. § 1983, allows aggrieved parties to hold federal officials liable for damages resulting from their actions committed under color of federal law."). Because Rodriguez was a federal pretrial detainee rather than a convicted prisoner, the Court construes his allegations to arise under the Due Process Clause of the Fifth Amendment, rather than under the Cruel and Unusual Punishment Clause of the Eighth Amendment. See Caiozzo v. Koreman, 581 F.3d 63, 69 (2d

Before the Court is Lower Manhattan Hospital's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, I recommend that the court GRANT Lower Manhattan Hospital's motion to dismiss the Bivens claim against it under Rule 12(b)(6); *sua sponte* dismiss with prejudice the Bivens claim against Dr. Naparst; and decline to exercise supplemental jurisdiction over the state law claims.

## BACKGROUND

The following facts are taken from Rodriguez's pleadings and the memorandum attached to his Request to Proceed *In Forma Pauperis* ("IFP Mem.") (ECF No. 2), which are assumed to be true for the purposes of this report and recommendation.[2] Nielsen v. Rabin, 746 F.3d 58, 61 (2d Cir. 2014).

I.   **Factual History**

On November 28, 2012, Rodriguez sustained injuries after he fell down a broken set of stairs while a federal pretrial detainee at the MCC. Complaint ("Compl.") at 3 (ECF No. 1). Two

---

Cir. 2009) (stating that the Eighth Amendment does not apply to pretrial detainees; rather, "a person detained prior to conviction receives protection against mistreatment at the hands of prison officials under the Due Process Clause of the Fifth Amendment if the pretrial detainee is held in federal custody . . . ."); Lloyd v. Lee, 570 F. Supp. 2d 556, 570 (S.D.N.Y. 2008). Because "it is plain that an unconvicted detainee's rights are at least as great as those of a convicted prisoner," the Court applies the same analysis under the Due Process Clause as it would under the Eighth Amendment. Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996). See also Nielsen v. Rabin, 746 F.3d 58, 63 n.2 (citing Caiozzo, 581 F.3d at 72).
[2] The Court may review any materials incorporated by reference in the pleadings and documents that, although not specifically incorporated by reference, are integral to the complaint. Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004). This includes documents on which the plaintiff relied in bringing suit, documents that are in the plaintiff's possession, and of which he had knowledge. See Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002). On July 21, 2014, the same day he filed his complaint, Rodriguez attached a memorandum to his Request to Proceed *In Forma Pauperis*, detailing the incident at Lower Manhattan Hospital. This document is integral to the complaint, and thus considered by the Court. Sira, 380 F.3d at 267.

correctional officers transported Rodriguez, who was in "a lot of pain and badly hurt," to Lower Manhattan Hospital. Id.

Rodriguez claims that while "at the hospital's bed," he could not "even move, with intensive pain all over [his] body, thinking [he] had broken bones or something worse." IFP Mem. at 2. He experienced "a lot of pain all over [his] body, specailly (sic) in [his] whole back, head and neck," blurred vision, and dislocated shoulders. Mem. IFP at 2. He alleges that Dr. Naparst "did not [take] into consideration all [of his] injuries," (Compl. at 2), "den[ied him] service", (id.), and "discharged [him] knowing [he] was seriously hurt." IFP Mem. at 2. Further, Rodriguez alleges that Dr. Naparst used "racial and abusive" expressions toward him, (id.), "treated him like an animal," (Compl. at 3), and promptly told him to "get up and leave" or "he was going to give [him] a shot to sedate [him], so the [correctional officers] could take [him] sedated." IFP Mem. at 2. Then, the two officers forcibly removed Rodriguez, who was "very dizzy and in pain," back to the MCC. Id. Rodriguez claims that he "felt discriminated against because [he] was an inmate." Compl. at 3.

The following morning, when Rodriguez tried to open his eyes, "everything was dark for a period of ten minutes. [T]hen after, [his] vision was blurry . . . and when [he] went to evacuate, chunks of blood came out and [he experienced a] strong pain in [his] back, head and neck . . . ." IFP Mem. at 3. When he stepped "on [his] feet[,] deep cramp waves [of a strong pain went] through [his] legs[,] going to [his] whole back and neck. [L]ater, [his] shoulder dislocated." Id. Rodriguez "could not get up" for approximately three weeks. Id.

Today, Rodriguez uses a wheelchair because his "body is so messed up that when [he tries] to put down [his] feet to walk, [his] legs get cramps sending strong waves of sharp pain to [his] whole body and neck." Id. at 2. He alleges that these complications, which he attributes to

Dr. Naparst's "medical negligence," have persisted and worsened. Id. at 3. Specifically, he alleges that he has: "[been unable to] sleep due to the strong headaches"; "blurry vision"; "painful cramps in [his] feet spreading to [his] back and neck with lots of pain"; "[p]ain in [his] rectum with bleeding"; "[d]islocated shoulders"; "[l]os[s] of memory"; "[d]epression and anxiety"; and "high blood pressure, cholesterol, and diabetes complications." Id.

## II.  Procedural History

Before Rodriguez filed his complaint in this action, he filed another complaint against the Warden of the MCC and the MCC Clinical Director, Dr. Bussanich, alleging deliberate indifference and inadequate medical care for the same injuries that serve the basis for this complaint. That action is still pending, and on February 27, 2014, the Honorable Paul A. Crotty denied the defendants' motion for judgment on the pleadings. Rodriguez v. Warden, Metro. Corr. Facility, 13 Civ. 03643 (PAC)(SN), 2015 WL 857817 (S.D.N.Y. Feb. 27, 2014), adopting report and recommendation.

On July 21, 2014, Rodriguez filed this *pro se* complaint against (1) Lower Manhattan Hospital and (2) Dr. Thomas Naparst. Rodriguez seeks "$5,000.000" in damages and "a Medical Bail." Compl. at 3. The United States Marshals Service ("U.S. Marshals Service") unsuccessfully attempted to serve Dr. Naparst three times at his home pursuant to Rule 4(c)(3), and Dr. Naparst still has never been served. Counsel for Lower Manhattan Hospital does not represent Dr. Naparst but states, "[w]hile the doctor was employed by New York Downtown Hospital when he treated [Rodriguez], he is currently employed by N.Y. Cornell Medical College." ECF No. 16. The Weill Cornell Medical College website lists Dr. Naparst as, among other things, an "Attending Physician, New York Presbyterian Lower Manhattan Hospital." See

Weill Cornell Medical College, Faculty, http://weill.cornell.edu/faculty/n.html (last visited July 31, 2015).

On January 30, 2015, Lower Manhattan Hospital filed a motion to dismiss under Rule 12(b)(6). On March 3, 2015, Lower Manhattan Hospital informed the Court that its motion to dismiss was never served on Rodriguez. At the Court's direction, Lower Manhattan Hospital served Rodriguez at his new address on April 10, 2015. Rodriguez did not timely oppose this motion, and on May 26, 2015, the Court warned Rodriguez that if he did not file an opposition by June 9, 2015, it would deem this matter fully submitted. Rodriguez has not filed an opposition to date.

## DISCUSSION

### I.   Motion to Dismiss Standard Under Rule 12(b)(6)

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must take "factual allegations [in the complaint] to be true and draw[] all reasonable inferences in the plaintiff's favor." Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009) (citation omitted). To state a legally sufficient claim, a complaint must allege "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (citation omitted). But a pleading that only "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. at 677 (quoting Twombly, 550 U.S. at 555). If the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Twombly, 550 U.S. at 570. Further, "complaints relying on the civil rights statutes are insufficient unless they contain some

5

specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987).

When faced with a *pro se* litigant, the Court must construe the complaint "liberally to raise the strongest arguments it suggests." Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013) (citing Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006)). "Even in a *pro se* case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks omitted). Thus, although the Court is "obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." Id.

## II. Analysis

The Court construes Rodriguez's *pro se* complaint as raising two claims against defendants: (1) a Bivens claim for deliberate indifference to a serious medical need; and (2) a state law claim for negligent medical care.

### A. Defendant Lower Manhattan Hospital

The Supreme Court has held that Bivens actions may not be brought against private corporations, even when they act under color of federal law. See Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 74 (2001). In Malesko, a federal prisoner sued a private corporation operating a halfway house under contract with the Federal Bureau of Prisons ("BOP"). Id. The Supreme Court held the defendant was not subject to Bivens liability for damages resulting from the constitutional deprivation suffered by one of its residents. Id. The Court found that the "core premise" of Bivens was "the deterrence of *individual* officers who commit unconstitutional acts," id. at 71 (emphasis supplied), and that implying a Bivens action against a corporate

defendant would undermine such deterrence. Id. at 80-81. "[I]f a corporate defendant is available for suit, claimants will focus their collection efforts on it, and not the individual directly responsible for the alleged injury." Id. at 70. See also El-Hanafi v. United States, 40 F. Supp. 3d 358 (S.D.N.Y. 2014) (dismissing a prisoner's Bivens claim against a private company under contract with the federal government to provide medical services); Bender v. Gen. Servs. Admin., 539 F. Supp. 2d 702 (S.D.N.Y. 2008) (dismissing Bivens claim against private security company under contract with the federal government).

Lower Manhattan Hospital is a privately-run hospital that accepts prisoners by referral from medical providers at the MCC, a BOP facility, for emergency treatment or other significant medical care. See Def. Br. at 9. Rodriguez alleges that he was admitted to Lower Manhattan Hospital after incurring injuries at the MCC, and that he was discharged that same day. Compl. at 3; IFP Mem. at 2-3. Rodriguez does not state that the Lower Manhattan Hospital is a federal agency. And although he does not allege that Lower Manhattan Hospital has a contract with the BOP, such a contractual relationship (if it did exist) is insufficient to overcome the bar to Bivens actions against private entities. See Malesko, 534 U.S. at 74, 74; El-Hanafi, 40 F. Supp. 3d at 363. Thus, Lower Manhattan Hospital cannot be subject to a Bivens action.

Further, even if Lower Manhattan Hospital were a federal agency subject to suit for constitutional violations, and even if the Court construes Rodriguez's claim against Lower Manhattan Hospital to invoke the tort law doctrine of *respondeat superior*, Lower Manhattan Hospital cannot be held vicariously liable under Bivens for the actions of Dr. Naparst. "[V]icarious liability is inapplicable to Bivens and § 1983 cases." Ashcroft, 556 U.S. at 676. "[R]ecovery is permitted only from individual federal officials." Holland v. Pinkerton Sec., 68 F. Supp. 2d 282, 284 (S.D.N.Y. 1999) (dismissing *pro se* plaintiff's Bivens claim against the

7

alleged tortfeasor's employer, a private security company under contract with the federal government). Accordingly, any constitutional claim against Lower Manhattan Hospital must be dismissed with prejudice.

### B. Defendant Dr. Naparst

Although Rodriguez has been unable to effect service upon Dr. Naparst with the assistance of the U.S. Marshals Service, I recommend that the court *sua sponte* dismiss with prejudice the constitutional claims against him. In Minneci v. Pollard, 132 S.Ct. 617, 626 (2012), the Supreme Court refused to extend its holding in Bivens to imply a right of action to a federal prisoner seeking damages for deliberate indifference against individuals employed by the privately run prison. The Supreme Court held that California's state tort laws offered adequate alternative remedies "because they provided for actions based upon 'want of ordinary care or skill,' 'negligent failure to diagnose or treat,' . . . as well as similar deterrence and compensation to victims." El-Hanafi, 40 F. Supp. 3d at 364 (quoting Minneci, 132 S.Ct. at 624). Thus, where a federal prisoner complains of deliberate indifference and seeks damages from a privately employed individual, alleging conduct that "typically falls within the scope of traditional state tort law (such as . . . improper medical care . . . ), the prisoner must seek a remedy under state tort law." Minneci, 132 S.Ct. at 626.

Similarly here, Rodriguez brings a Bivens claim against a privately employed individual for the inadequate provision of medical care in violation of the Fifth Amendment. "Because Minneci foreclosed a Bivens remedy in [almost] precisely this type of situation, [Rodriguez's] claims are" likely barred. El-Hanafi, 40 F. Supp. 3d at 364-65 (dismissing a prisoner's deliberate indifference claim against the employee of a private hospital under contract with the federal government when adequate alternative state law remedies were available). In contrast to El-

Hanafi, the record does not reflect that Lower Manhattan Hospital contracted with the BOP or the MCC, further diminishing the likelihood that a Bivens claim against Dr. Naparst would ultimately prevail. Thus, although the Court could permit Rodriguez, with the assistance of the Marshals Service, to attempt service on Dr. Naparst at the N.Y. Cornell Medical College, any federal constitutional claim against him would fail to state a claim and therefore would be subject to immediate dismissal. See 28 U.S.C. § 1915A(b)(1) (authorizing the Court to dismiss on its own initiative a prisoner case brought *in forma pauperis* if it "fails to state a claim upon which relief may be granted")

### C. State Law Claims

Because the Court dismisses the federal claims against Lower Manhattan Hospital and Dr. Naparst, it declines to exercise supplemental jurisdiction over the remaining state law claims, including any claim for the negligent provision of medical care or medical malpractice. See 28 U.S.C. § 1367(c); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); Pitchell v. Callan, 13 F.3d 545, 549 (2d Cir. 1994) ("[I]t is axiomatic that a court should decline to exercise jurisdiction over state-law claims when it dismisses the federal claims prior to trial." (quoting Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).

## CONCLUSION

For these reasons, I recommend that the Court GRANT Lower Manhattan Hospital's motion to dismiss the <u>Bivens</u> claim against it under Rule 12(b)(6); *sua sponte* dismiss with prejudice the <u>Bivens</u> claim against Dr. Naparst; and decline to exercise supplemental jurisdiction over any state law claims against these defendants.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

Dated: New York, New York
       July 31, 2015

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS

## TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Crotty. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

cc:       Luis Ricardo Paulino Rodriguez
           A#075-923-656
           ICE Processing Center
           8915 Montana Avenue
           El Paso, TX 79925 Rodriguez